**COATES et al. v. UNITED STATES.**

No. 14093.

United States Court of Appeals
Eighth Circuit.

May 4, 1950.

B. Sherman Landau, St. Louis, Mo. (Louis E. Miller and Miller & Landau, St. Louis, Mo., on the brief), for appellants. S. Billingsley Hill, Attorney, Department of Justice, Washington, D. C. (A. Devitt Vanech, Assistant Attorney General, Drake Watson, United States Attorney, Charles J. Hughes, Special Assistant to the United States Attorney, St. Louis Mo., and Roger P. Marquis, Attorney, Department of Justice, Washington, D. C., on the brief), for appellee.

Before SANBORN, WOODROUGH and THOMAS, Circuit Judges.

WOODROUGH, Circuit judge.

Statement.

The appellants instituted this action against the United States on November 26, 1948, to recover $179,540.05, for the flooding and alleged consequent destruction of their farm and crops. The complaint averred that the "action arises under the Fifth Amendment to the Constitution of the United States and also under the Federal Tort Claims Act, 28 U.S.C. Sec. 1346 (b)." As the basis of the claim it was alleged in the complaint that, "6. Beginning in 1928 and progressing continuously thereafter certain agencies of the defendant entered upon a program of creating an avenue of waterway transportation over the Missouri River from Kansas City, Missouri, to St. Louis, Missouri, by substantially changing the flow, current, channel, banks and course of the Missouri River. Such effects were achieved by means of driving pilings, dredging channels, laying rip-raps and employing mechanical and artificial devices."

Then after alleging that the result of the government's actions was to change the nature of the annual spring rise of the river upon plaintiffs' land from a gradual backing up and recession which left beneficial deposits of top soil thereon to a current which eroded and sanded the land and destroyed the crops, the complaint alleged:

"13. Said loss and damage to plaintiffs directly resulted from the continuing acts of the defendant in so negligently changing the Missouri River as aforesaid as to cause the aforementioned loss and damage."

The United States answered, among other things, that if the action arises under the Fifth Amendment to the Constitution or under the Federal Tort Claims Act, the District court is without jurisdiction. At a pre-trial conference the questions were submitted whether the jurisdictional limit of $10,000 in the Tucker Act, 28 U.S.C.A.

§ 1346(a) (2) and the "discretionary function" exception in the Federal Tort Claims Act, Section 2680(a) denied the court jurisdiction. The United States moved the court orally to dismiss the complaint on those grounds.

The District court granted the government's motion to dismiss the complaint for lack of jurisdiction and entered its order accordingly. This appeal follows.

## Opinion.

The appellants do not contend that the District court would have had jurisdiction of their action against the United States prior to the enactment of the Federal Tort Claims Act and it is fully recognized that the government was immune from suit on the cause of action alleged in the complaint and the District court was without jurisdiction over it unless such immunity was withdrawn and jurisdiction conferred by the terms of the Act. Appellants' contention is, therefore, that the Act conferred jurisdiction. It is contended for the government and the District court held that the acts complained of on which the plaintiffs base their claim for relief fall within the "discretionary function" exception of the Act and are accordingly not within the jurisdiction of the District court.

We think the District court properly held that plaintiffs' claim falls within the "discretionary function" exception of the Act and that the dismissal for want of jurisdiction was without error.

The jurisdiction conferred by the Act includes, Section 1346(b), "civil actions on claims against the United States, for money damages * * * for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." But Section 2680 declares that the provisions of Section 1346(b) "shall not apply to (a) Any claim * * * based upon the exercise or performance or the failure to exercise or per-form a discretionary function or duty on the part of a federal agency * * * whether or not the discretion involved be abused."

■ The plaintiffs' claim as stated is based on defendant's "negligently changing the Missouri River" and the function of changing the river in respect to which function negligence is claimed is identified and described in the quoted paragraph 6 of the complaint. It comprehends the Missouri River control program and its execution by the government agencies continuing on a vast scale since 1928. Manifestly the project embodies decisions and the exercise of discretion and discretionary functions of the highest order by both the legislative and executive branches of the government and the formulation, expression and application of governmental policy entirely beyond any power of interference by the judicial branch. It would be difficult if not impossible to point to any example of exercising and performing discretionary functions and duties on the part of federal agencies more clearly within the exception of the Federal Tort Claims Act than the changing of the Missouri River under legislative and executive sanction pursuant to political and discretionary decisions of the highest governmental order on which the plaintiffs have chosen to base their claim of negligence in this case. We have found no merit in their contention that their claim as stated in their complaint may be found to fall within the jurisdiction conferred by the Act.

The appellants have contended that the words "discretionary function" in the Exceptions to the Act are so elastic that the court may and should construe them so as not to include the changing of the Missouri here charged to have been negligently done in the course of some twenty years of governmental project development, but the cases cited for the government clearly establish that the term "discretionary function or duty" has a long history of precise meaning in a legal sense and there is nothing in the Federal Tort Claims Act to indicate that the criteria for distinguishing a discretionary function from administrative action or performance of an identified task

or job of work, shall differ from that employed in other contexts. The Congress had a sound basis for the use of the words in the Exceptions of the Act and used them in recognition of the separation of powers among the three branches of the government and the considerations of public policy which have moved the courts to refuse to interfere with the actions of officials at all levels of the executive branch who, acting within the scope of their authority, were required to exercise discretion or judgment. As stated by Chief Justice Marshall in Marbury v. Madison, 1803, 1 Cranch 137, 170, 2 L.Ed. 60, "the province of the court is, solely, to decide on the rights of individuals, not to inquire how the executive, or executive officers, perform duties in which they have a discretion. Questions in their nature political, or which are, by the constitution and laws, submitted to the executive can never be made in this court."

Instances in which the courts have had occasion to consider the meaning of "discretionary functions" and to disclaim judicial power to interfere with, to enjoin or mandamus, or inquire into the wisdom or unwisdom or "negligence" in their performance within the scope of authority lawfully granted are shown in the following cases: Marbury v. Madison, 1803, 1 Cranch 137, 170, 2 L.Ed. 60; Decatur v. Paulding, 1840, 14 Pet. 497, 514, 515, 10 L. Ed. 559; Riverside Oil Co. v. Hitchock, 1903, 190 U.S. 316, 324–325, 23 S.Ct. 698, 47 L.Ed. 1074; Martin v. Mott, 1827, 12 Wheat. 19, 31, 6 L.Ed. 537; Mississippi v. Johnson, 1866, 4 Wall 475, 18 L.Ed. 437; Louisiana v. McAdoo, 1914, 234 U.S. 627, 34 S.Ct. 938, 58 L.Ed. 1506; Amy v. Supervisors, 1870, 11 Wall. 136, 138, 20 L.Ed. 101; Kendall v. Stokes, 1845, 3 How. 87, 97, 98, 11 L.Ed. 506, 833; Spalding v. Vilas, 1896, 161 U.S. 483, 498, 16 S.Ct. 631, 40 L. Ed. 780; Johnston v. District of Columbia, 1886, 118 U.S. 19, 6 S.Ct. 923, 30 L.Ed. 75; Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 704, 69 S.Ct. 1457.

That the Congress very deliberately used the words "discretionary function or duty" in the Exceptions to the Act with the intent that they should convey the same meaning traditionally accorded by the courts and to continue to exclude judicial authority from interference with lawful legislative and executive action is shown in the legislative history of the Act.

The Committee on the Judiciary of the House of Representatives in H. Rept. No. 1287 to accompany H. R. 181, an earlier bill containing the same provisions, 79th Congress, 1st Session, dated November 26, 1945, said of the "discretionary function" exception (p. 5): "The first subsection of section 402 exempts from the bill claims based upon the performance or non-performance of discretionary functions or duties on the part of a Federal agency or Government employee, whether or not the discretion involved be abused, and claims based upon the act or omission of a Government employee exercising due care in the execution of a statute or regulation, whether or not valid. This is a highly important exception, intended to preclude any possibility that the bill might be construed to authorize suit for damages against the Government growing out of an authorized activity, such as a flood-control or irrigation project, where no negligence on the part of any Government agent is shown, and the only ground for suit is the contention that the same conduct by a private individual would be tortious, or that the statute or regulation authorizing the project was invalid."

Substantially the same language appears in H. Rept. 2245 to accompany S. 2221, 77th Congress, 2d Session, and S. Rept. 1196 to accompany S. 2221, 77th Congress, 2d Session. The Memorandum for the Judiciary Committee which follows and is printed with the Hearings on the changes made in H. R. 5373 by H. R. 6463, 77th Congress, 2d Session, dated January 29, 1942, also contains the foregoing statement, but adds (p. 44): "It is neither desirable nor intended that the constitutionality of legislation, the legality of regulation, or the propriety of a discretionary administrative act, be tested through the medium of a damage suit for tort." That follows verbatim the statement submitted by Assistant Attorney General Shea and printed at pages 28–33 of the Hearings. Assistant Attorney General Shea also stated (p. 29):

"In respect of exemptions, the bills differ as follows: (i) H.R. 5373 does not contain the general exemption set forth in subsection 402(1) of H.R. 6463 [S. 2221], but it is likely that the cases embraced within that subsection would have been exempted from H.R. 5373 by judicial construction. It is not probable that the courts would extend a Tort Claims Act into the realm of the validity of legislation or discretionary administrative action, but H.R. 6463 [S. 2221] makes this specific."

The same statement appears at page 65 of the Memorandum for the Judiciary Committee printed with the Hearings. Cf. 35 Georgetown L.J. 1, 41.

Commenting on the express mention of flood control in H. Rept. 1287, supra, p. 18, it is stated in 35 Georgetown L.J. 1, 42–43:

"The specific mention of flood control or irrigation projects as covered by the exception in Section 421(a) undoubtedly covers situations where approved flood-control activities of the Government, carried out in a non-negligent manner, imperil privately owned property or even where the United States, acting under the commerce clause of the Constitution, in the improvement of navigation causes mud and silt to settle on plaintiff's land in the bed of a formerly navigable tidewater creek, destroying the navigability thereof and depriving plaintiff on part of his fast land of accessibility to the creek in its natural and navigable state. Thus it is clear that the present Act furnishes no basis of claim against the United States arising from such operations, carried out in a non-negligent manner, even though the same or similar activities by a private individual would be tortious. Surely, it would be difficult to conceive of an activity more governmental in its inherent nature than flood control.

\*  \*  \*  \*  \*  \*

"It is evident from the cited flood-control cases that the present Act would exclude 'taking cases' involving the sovereign exercise of the power of eminent domain for which a well-established remedy exists under the Fifth Amendment. Cases in this respect are legion, making citation unnecessary. Even where the particular 'taking case' might have a tortious aspect, were a private individual so to act, under the analogy of Langford v. United States, [1879, 101 U.S. 341, 346, 25 L.Ed. 1010] the present Act is obviously not intended to supersede an historic remedy, previously existing in the claimant to sue for just compensation without express sanction by statute.

"Inasmuch as the United States is not to be held liable hereunder for direct damages of a non-negligent character occasioned in the carrying out of an authorized public project such as flood control or irrigation work, it would seem to follow as a logical sequitur that its long standing exemption from remote and consequential damages involving a taking in connection with such activity, or in fact consequential damages flowing from any taking incident to the non-negligent performance of a public improvement should continue to be exempt from suit by virtue of Section 401(a) of the Act."

Appellants have cited and relied upon Griggs v. United States, 10 Cir., 178 F.2d 1; State of Maryland, for use of Pumphrey v. Manor Real Estate & Trust Co., 4 Cir., 176 F.2d 414; and Lemaire v. United States, D.C., 76 F.Supp. 498, as tending to support the jurisdiction here, but we find nothing in them indicating that matters which have heretofore been understood to involve discretion of government officers do not do so under the Tort Claims Act. On the contrary, we think the cases which have been decided under the Act establish a clear pattern defining discretion precisely as it had always been defined in law before the Act and as Congress clearly intended it should be defined. Cromelin v. United States, 5 Cir., 177 F.2d 275; Denny v. United States, 5 Cir., 171 F.2d 365; Old King Coal Co. v. United States, D.C.Iowa, 88 F.Supp. 124; Kendrick v. United States, D.C.Ala., 82 F.Supp. 430; Thomas v. United States, D.C.Mo., 81 F.Supp. 881.

■ It is argued for appellants that their complaint may be read as though it charged negligence in the changing of the river in respect to some mere job of work involved in carrying on the river project

**820**

and not in the exercise of legislative and executive functions which sanction it and the performance of discretionary functions which control it. But the complaint presents no such charge and the court could not go outside the complaint to assume jurisdiction of a claim not stated in it. It had no jurisdiction of the claim stated and the order of dismissal is sustained.