## LAUTERBACH et ux. v. UNITED STATES.

### No. 1290.

United States District Court
W. D. Washington, S. D.

Feb. 5, 1951.

Elwood Hutcheson, Yakima, Wash., for plaintiffs.

J. Charles Dennis, U. S. Atty., Guy A. B. Dovell, Asst. U. S. Atty., Seattle, Wash., and Clifford C. Comisky, Chief Legal Branch, Corps of Engineers, United States Army, Portland, Or., for defendant.

LEAVY, District Judge.

Evidence, both oral and documentary, having been introduced; oral arguments having been made; and the cause submitted for decision upon the evidence, and the issues herein before the court, and being fully advised the court makes and enters the following:

### Findings of Fact

#### I.

That this action is brought under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671 et seq., pursuant to which law the above-entitled court has jurisdiction to

determine the same; that the plaintiffs at all times mentioned in the complaint were and now are husband and wife, and since August 27, 1946, the lawful owners of that portion of Sections 20 and 21, Township 2 North, Range 7 E. W. M., situate, adjoining and adjacent to the north bank of the Columbia River in Skamania County, Washington, and particularly described by metes and bounds, in plaintiffs' complaint filed in this action, on which property plaintiffs are now and were prior to the commencement of this action residing.

## II.

That the United States of America is a corporation sovereign, and the owner and operator of the Bonneville Dam located near Bonneville, Oregon and North Bonneville, Washington, on the Columbia River, a navigable stream, the approximate center line of which is the boundary between the states of Washington and Oregon at the point of said dam.

## III.

That the construction of said Bonneville Dam and its appurtenances was authorized September 30, 1933 by the Federal Emergency Administration of Public Works and adopted by the River and Harbor Act of August 30, 1935, 49 Stat. 1038 (Senate Committee Print, 73rd Congress, 2nd Session); and the completion, maintenance and operation of the Bonneville Project was authorized, in language as follows: "For the purpose of improving navigation on the Columbia River and for other purposes incidental thereto, the dam, locks, power plant, and appurtenant works now under construction * * * at Bonneville, Oregon and North Bonneville, Washington [hereinafter called Bonneville Project], shall be completed, maintained, and operated under the direction of the Secretary of War and the supervision of the Chief of Engineers * * *. The Secretary of War shall provide, construct, operate, maintain, and improve at Bonneville project such machinery, equipment, and facilities for the generation of electric energy as the administrator may deem necessary to develop such electric energy as rapidly as markets may be found therefor." Public Law 329, 75th Congress, August 20, 1937, 16 U.S.C.A. § 832.

Pursuant to which authority said Dam was completed in the year 1938.

## IV.

That the Columbia River upon which the Bonneville Dam is constructed is now and was at all times mentioned in plaintiffs' complaint, and prior thereto from time immemorial, a large and navigable stream flowing to the sea in a general southwesterly course, which stream at the time of the construction of said dam, and for generations untold prior thereto, flowed and does now flow in front of the tracts described in plaintiffs' complaint.

That beginning at a point on the north shoreline of said river some 1700 feet upstream from the easterly boundary line of plaintiffs' property, a bend occurs in said river, consisting of a southwesterly turn in the channel through a central angle of about 60 degrees and a center radius of about 1400 feet, the width of the upstream and downstream ends of the bend being about 950 feet and 1150 feet, respectively, and the length of the bend along the Washington shoreline being about 2020 feet with the end of said bend occurring approximately 320 feet from the easterly boundary line and 430 feet from the westerly boundary line of the lands described in the complaint, which lands have an approximate frontage of 750 feet along the north bank of the Columbia River.

That the width of the main channel of the Columbia River at the end of the spillway basin is about 1200 feet, while the channel width at the beginning of the said bend is about 950 feet; and nearly all the resulting 250 feet of convergence is effected by Bradford Island, an island located in said river, as hereinafter set forth, since the Washington shore extends practically straight downstream some 2500 feet from and perpendicular to the spillway dam axis to the beginning of said bend in the river, and by which island the flow of said channel is deflected towards the north shore before it reaches the beginning of the above described bend.

## V.

That at all times mentioned in plaintiffs' complaint and for generations prior thereto there existed in the stream opposite and above plaintiffs' lands at said bend, a natural barrier to the flow of said stream in the form of an island, now described as Bradford Island.

That commencing in April, 1934, and ending in April, 1936, the defendant caused a fill to be made on said island, the toe of which fill was established and in place September 15, 1934, at approximately contour plus 40, and the finished elevation of the fill plus 70.

## VI.

That for some length of time prior and during the flood of 1948 mentioned in said complaint, both plaintiff Henry Lauterbach and his wife Faye Lauterbach were employees of the Portland District, Corps of Engineers, United States Army, with duties at Bonneville, Oregon, in connection with the Bonneville Project.

## VII.

That the Columbia River is a stream subject to floods and overflows, and during the months of May and June, 1948, there occurred and continued in the Columbia River a violent flood and inundation and the said river left its banks at many points for many miles along said river, and while said flood was so raging and during the time the river was receding to original channel, large masses of driftwood, trees and logs and other floatable debris were carried thereby down the river from upstream, the peak of which flood occurred at said dam on May 31, 1948, when the flow of said river was over one million cubic feet per second.

## VIII.

That the claim set up in plaintiffs' complaint for damages, in so far as it is based upon the acts and omissions of federal employees in connection with the construction of Bonneville Dam and appurtenances, including omission of rip-rapping the river bank below the dam, this court has heretofore on May 22, 1950, upon defendant's motion to dismiss the action, determined that such part of plaintiffs' claim is not cognizable under the Federal Tort Claims Act, for the reason same falls within an exception contained in Section 421(a) of said Act, 28 U.S.C.A. § 2680(a), and upon such ruling the trial herein is restricted to evidence upon plaintiffs' remaining claim of negligence in the operation of said dam during said flood whereby it is charged their property was washed away, and they suffered damages therefrom.

## IX.

That the evidence herein shows that there are now and were at the time of said flood measuring devices or gauges set up at the Bonneville Dam which in proper condition, through instrumental process, recorded on several graphic charts designed therefor the curve of elevation in figures at the Bonneville Pool, and that said elevation could not be maintained exactly, but as shown by the chart or graph thereof was continuously fluctuating above and below the ideal curve striven for, and that such deviation was duly corrected in conformity therewith and in compliance with the report on the half hour from Hood River, the established point of control.

That on June 2, 1948, during said flood, a measuring gauge at said dam became clogged with silt and went out of order for some hours before detection, during which time the water level at the dam raised several feet, and upon being notified of increased elevation at Hood River, the said control point, the operators at Bonneville Dam discovered the gauge out of order and proceeded to repair same, and in due course enlarged the openings of the dam so as to control the Bonneville Pool at pre-determined elevations in accordance with the established schedule for all flows of the river, and so as to pass the actual quantity of water currently flowing in the river.

That the act of drafting or release of water at the spillway dam complained of by plaintiffs, commenced, according to testimony, on June 2, 1948, at 6:30 P. M., and was concluded on June 3, 1948, at 6:00 A. M., which period of drafting was rendered necessary as a result of pondage taking place from 11:00 A. M. to 6:30 P. M. on June 2, 1948, due principally to said defective measuring instrument.

That said act of drafting water was in good faith and in the discretion of the Resident Engineer, and the Portland District Engineer and was in the line of duty when faced with the second largest flood in recorded history on the Columbia River, and one of the great rivers of the world, which in the space of ten days had gone from a maximum average flow of 500,000 cubic feet to a flow of over a million cubic feet per second.

That the evidence herein establishes that erosion of the river shore was taking place immediately above and also along the front of plaintiffs' property on, if not before, May 28, 1948, at least four or five days prior to the drafting of water on June 2 and 3, 1948, and of which the plaintiffs' complain, and that the plaintiffs' claim that no erosion occurred at their property prior to the date of said drafting is overwhelmingly refuted by such evidence of actual observance hereinabove stated, and by the testimony of a witness, schooled in the science of erosive action, and who was engaged for many months prior to the construction of said dam in the hydraulic experimental work of the Bonneville project, and whose testimony is clear and convincing and to the effect that such drafting as took place on account of the incident of the defective gauge, was so insignificant that no conceivable damage was done thereby.

### X.

That in addition to their failure to sustain their claim that they suffered damages and loss of property during said flood as a result of the negligent or wrongful act or omission of various employees and officers of the government while acting within the scope of their office and employment, the plaintiffs have also failed to name or identify any officer, employee or agent of the government as responsible for any such claimed negligent or wrongful act or omission.

From the foregoing Findings of Fact, the court now concludes:

### Conclusions of Law

#### I.

That the court has jurisdiction of the subject matter of this action and of the parties hereto.

#### II.

 That the plaintiffs have failed to show that a specific negligent or wrongful act or omission of some identified employee of the government lead proximately to the damage and loss claimed in this action, and liability of the government under the Federal Tort Claims Act has not been established herein, it being the object of the surrender of immunity by the government thereunder to relieve its employees of liability in cases in which the doctrine of respondeat superior would apply if the United States were a private corporation, which object is expressed in the statute providing that compromise or judgment under the act effects release of a claim and a bar to action against such employee. See 28 U.S.C.A. §§ 2672, 2676; Prechtl v. U. S., D.C., 84 F.Supp. 889; U. S. v. Campbell, 10 Cir., 172 F.2d 500, certiorari denied 337 U.S. 957, 69 S.Ct. 1532, 93 L.Ed. 1757; and Hubsch v. U. S., 5 Cir., 174 F.2d 7, remanded for settlement, 338 U.S. 440, 70 S.Ct. 225.

#### III.

That the plaintiffs are not entitled to recover judgment for damages, and their claim should be denied, and this action dismissed, and the defendant should be allowed judgment for its costs, and judgment should be entered in accordance herewith.