SMITH v. UNITED STATES.
Civ. No. 1450.

United States District Court
D. Delaware.
June 3, 1953.

132

Morris Cohen and Thomas Herlihy, Jr., of Wilmington, Del., for plaintiff.

William Marvel, U. S. Atty., of Wilmington, Del., for the United States.

LEAHY, Chief Judge.

Plaintiff is lessee of a three-acre tract of land in New Castle Hundred whose northerly boundary is a free running stream known as Armstrong Creek. Flowing in an easterly direction, the creek upstream passes from lands on which the New Castle U. S. Army Air Base was constructed between 1942 and 1944, and over intervening land—thence onto and beyond plaintiff's tract. Prior to construction of the air base, plaintiff erected and maintained on the premises his dwelling house, a separate building used as a store and apartment, and five ponds of varying sizes fed from the creek water collected in a reservoir and dam he had built across the creek.

The store and ponds had been used since 1938 in plaintiff's business. He stores, propagates, and sells fish, turtles, aquatic plants and vegetation. The complaint alleges in two counts the negligent and wrongful activities and omissions of the Government's servants in constructing the Air Base; it charges defendant changed the grade and contour of the upstream land so as to increase the drainage of surface waters with the result the creek banks and much sand and gravel were washed downstream, eventually filling plaintiff's reservoir and so raising the bed of the creek that only a "small trickle of water" now runs to plaintiff's tract. As a result, plaintiff seeks damages for alleged loss of profits from his business, damages for the destruction of fish and aquatic plants, the deprivation of the normal flow of water from Armstrong Creek onto his premises, and expense incurred for the removal of his buildings and business to other property.

The present suit was brought under the jurisdictional provisions of 28 U.S.C. § 1346(b), as extended by the Private Law 12, 82d Cong., 1st Sess., April 17, 1951, 65 Stat. A6,[1] which is found as a footnote.

1. "An Act
"Conferring jurisdiction upon the United States District Court for the District of Delaware to hear, determine, and render judgment upon the claim of Alvin Smith, of New Castle, Delaware, arising out of the damage sustained by him as a result of the construction and maintenance of the New Castle United States Army Air Base, New Castle, Delaware.

" Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the jurisdiction conferred upon the United States District Court of the District of Delaware by subsection (b) of section 1346, title 28, United States Code, is

Defendant has moved "to dismiss the complaint for failure to state a cause of action and on the specific grounds that no tort is complained of for which the United States can be made liable under the Federal Tort Claims Act under the limited waiver of sovereign immunity effected by the passage of said Act."

At the outset, I lower the appropriate back-drop for accurate staging of the issues under the motion to dismiss under Fed.Rules Civ.Proc. rule 12(b)(6), 28 U.S.C. Such a motion, in testing the legal sufficiency of a complaint, admits the well-pleaded, material allegations[2] but not conclusions of law or tenuous deductions of fact.[3] A complaint must clearly be without merit to be dismissed, but absence of law or facts to support the claim, or disclosure of a necessarily fatal fact, may result in dismissal. The test: it must appear to a certainty a plaintiff has no right to any relief under any aspect of the pleaded, provable facts before dismissal for insufficiency is granted. Continental Collieries v. Shober, 3 Cir., 130 F.2d 631; Berghane v. Radio Corporation of America, D.C.Del.1945, 4 F.R.D. 446.

1. As to the first issue presented in the Government's motion, I confront the contention no compensable cause of action has been stated. Under the Federal Tort Claims Act, the United States, with stated exceptions, submits to suits and liability for torts "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."[4] Substantive law of the State of Delaware thus controls the issue and measures the sufficiency of the complaint.

In Ciconte v. Shockley, 31 Del.Ch. 376, 75 A.2d 242, 244, Chancellor Harrington enjoined as a nuisance the runoff of rain water from defendant's roof into plaintiff's alley and buildings when caused by defendant's mode of constructing his roof. In so ruling, the Chancellor said that, although an owner of land is not required to prevent the flow of surface water so long as he leaves the land in its natural condition, he "cannot, however, by artificial means lawfully collect and precipitate surface water in increased and unnatural quantities upon the land of his neighbor to his substantial injury or damage."

A motion to dismiss the complaint for failure to state a cause of action was denied in another Delaware case of a similar nature, Staats v. Hubbard, 31 Del.Ch. 41, 63 A.2d 856. There, the allegations were that defendant had so raised the level of his land that surface waters flowed therefrom down upon his complaining neighbor's land. The Court rejected defendant's contention that he, having used no artificial drains or ditches, did no wrong and was entitled to get rid of surface water in any way he could. On the contrary, the Court expressed a preference for the test of reasonable user.

The present complaint is sufficient under Delaware's decisional law for purposes of the motion to dismiss, unless there is merit in defendant's contention that the cited cases are inapplicable because the parties were adjoining owners of land, not lessees, as here, of non-contiguous realty. However, this argument is weak before the many cases recognizing that a tenant, apart from his landlord, has a remedy for consequential damages to his leasehold, includ-

hereby extended to a civil action, which may be commenced not later than one year after the enactment of this Act, asserting any claim or claims of Alvin Smith, of New Castle, Delaware, against the United States for money damages arising out of property damage sustained by him as a result of the construction and maintenance of the New Castle United States Army Air Base, New Castle, Delaware. Except as otherwise provided in this Act, all provisions of law applicable in and to such subsection and applicable to judgment therein and

appeals therefrom, are hereby made equally applicable in respect of the civil action authorized by this Act: Provided, however, That nothing in this Act does or shall constitute an admission of liability on the part of the Government of the United States of America.
"Approved April 17, 1951."

2. Clark v. Uebersee Finanz Korporation, 332 U.S. 480, 68 S.Ct. 174, 92 L.Ed. 88.

3. Le Clair v. Swift, D.C., 76 F.Supp. 729.

4. 28 U.S.C.A. § 1346(b).

ing injuries to his business thereon, occasioned by acts of a defendant outside the bounds of the tenant's holding.[5] True, grave problems of proof of causal connection, damages, and other elements of a successful case may confront a plaintiff at trial, but the nature of the present motion precludes such conjectural misgivings at this time.

2. Passing to the second and more substantial contention of the defendant Government, I face a denial of my jurisdiction to hear and decide this cause in that the specific exceptions of the Federal Tort Claims Act do not permit plaintiff's suit to be maintained. There being no other enabling statute to circumvent the sovereign's immunity to a civil action of this nature, this argument, if valid, would be dispositive of the entire matter.

Plaintiff's presence in court is grounded upon 28 U.S.C. § 1346(b), and, to be maintainable, must sidestep the exclusionary language of § 2680(a) of the same Title, which in pertinent part provides:

"The provisions of this chapter and section 1346(b) of this title shall not apply to

"(a) Any claim * * * based upon the exercise or performance or the failure to exercise or perform *a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved* be abused." [6]

Construing the written words, i. e., to cull meaning from an expressed idea and then to apply it to a set of facts, is often as imprecise and conceptualistic as the modes of recording thoughts are varied. Such is so whether interpretation be attempted of statutes, wills, contracts, or other memorials created by lawyers and lawmakers. To say words should be "strictly" or "literally" construed is ofttimes merely an argumentative artifice to justify a preconceived conclusion. Propounding an opposite view on the premise the words should be "liberally" construed or to accord with the framer's "intentions" may be the converse aspect of the same maneuver. Indeed, a great number of treatises and decisions are to be found concerning statutory construction, and many "canons of construction" have been advanced.[7] Perhaps, all of them have a place under differing circumstances, and perhaps there is no one ineluctable, "correct" canon for a statute. Thus, the student can discover courts vary so often and so widely in interpreting statutory language. The words of exclusion in § 2680 (a) of the Federal Tort Claims Act unhappily provide no exception.[8] I have examin-

---

5. See 12 A.L.R.2d 1194, et seq., for a collection of these cases.

6. Emphasis added.

7. Professor Karl N. Llewellyn has, without exhausting the field, enumerated 28 separate canons, having authoritative foundation, which lead to a certain construction of a given statute, and 28 other canons, having equal support in the authorities, which lead to an opposite construction. Each of the first 28 is aptly termed a "thrust"; each of the second a "parry". Of the problem, Llewellyn says, "But a court must strive to make sense *as a whole* out of our law *as a whole*. It must take the music of any statute as written by the legislature. But there are many ways to play that music, and a court's duty is to play it well, and in harmony with the other music of the legal system. Hence, in the field of statutory construction also, there are 'correct', unchallengeable rules of 'how to read' which lead in happily variant directions." "Remarks On the Theory of Appellate Decision and the Rules or Canons About How Statutes Are To Be Construed", one of fourteen articles constituting a symposium on statutory construction, 3 Vanderbilt Law Review, 365–584 (1950).

8. While specifically denying any result was predetermined before the cases were studied, I have attempted to construe the statute with all the common sense and legal acumen available. In so doing, I have been drawn to the comment of Mr. Justice Cardozo, (Anderson v. John L. Hayes Construction Co., 243 N.Y. 140, 147, 153 N.E. 28, 29), adopted as applicable to impleading the United States under the Federal Tort Claims Act by the Supreme Court in United States v. Yellow Cab Co., 340 U.S. 543, 71 S.Ct. 399, 406, 95 L.Ed. 523: "No sensible reason can be imagined why the state, having consented to be sued, should thus paralyze the remedy."

ed a representative number of cases,[9] have been able to reconcile some to my satisfaction, but find others have incompatible interpretations of the "discretionary" exclusion in the Act.

Examined cases concerning medical services [10] negligently rendered appear fairly uniform in holding that the "discretion" of the Government employees or agents is exercised, if at all, in the admission of the patient to treatment or his release therefrom. After the act of admission to treatment, the details or particulars of the medical services, although involving skill and training, are held to be non-discretionary for purposes of the Federal Tort Claims Act. Other cases, involving dissimilar factual patterns and perhaps technically distinguishable, nevertheless support the underlying principle.[11] Further, it seems the Government agency or employee must have freedom to decide whether to perform the pivotal act from which the alleged tortious consequences arise or not so to act. When a statute, ordinance, or other proper authority imposes a duty upon the Government agency to act in a prescribed manner, no discretion is involved in assuming that duty,[12] and the details of discharging it are impliedly non-discretionary. Conversely, when there is no obligation to act in the sphere of jurisdiction assigned to the governmental agency, the election not to act, of which the plaintiff complains, is discretionary.[13] Some courts have been persuaded—I suggest dubiously persuaded—of the discretionary nature of the details of executing a course of action by a governmental agency because those very details had been approved by a high echelon officer of the government.[14] In one leading case,[15] whose authority has controlled or

9. See 19 A.L.R.2d 846 for a collection of cases.

10. Grigalauskas v. United States, D.C., 103 F.Supp. 543; Costley v. United States, 5 Cir., 181 F.2d 723; Griggs v. United States, 10 Cir., 178 F.2d 1, reversed on other grounds, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152; Dishman v. United States, D.C., 93 F.Supp. 567; Denny v. United States, 5 Cir., 171 F.2d 365; Kendrick v. United States, D.C., 82 F.Supp. 430 (release of psychotic veteran).

11. Somerset Seafood Co. v. United States, 4 Cir., 193 F.2d 631 (duty to mark wrecked vessel held mandatory and thus non-discretionary; however, even if discretionary, discretion exercised when decision to mark made, not in details as to how to mark); Hambleton v. United States, D.C., 87 F.Supp. 994, reversed on other grounds, 9 Cir., 185 F.2d 564, 23 A.L.R.2d 568 (sergeant's decision to interrogate plaintiff or not to do so was the discretionary act, not the manner or means chosen to conduct the interrogation). Cf. Ure v. United States, D. C., 93 F.Supp. 779 (assumption of the management and control of a column of water in U. S. irrigation canal held non-discretionary).

12. Somerset Seafood Co. v. United States, footnote 11, supra; State of Maryland for Use of Pumphrey v. Manor Real Estate & Trust Co., 4 Cir., 176 F.2d 414 (Public Housing Authority had absolute duty of keeping the premises safe for tenants); Oman v. United States, 10 Cir., 179 F.2d 738 (statute precluded exercise of discretion in directing cancellation of old grazing permits, unlike discretion conferred to issue or not to issue new permits).

13. Chournos v. United States, 10 Cir., 193 F.2d 321, certiorari denied 343 U.S. 977, 72 S.Ct. 1074, 96 L.Ed. 1369 (failure to grant grazing permit); Sickman v. United States, 7 Cir., 184 F.2d 616, (failure to prevent crop damage by wild fowl congregating on government game preserve and failure to authorize hunting and killing of migratory birds); Old King Coal Co. v. United States, D.C., 88 F.Supp. 124 (failure of Secretary of Interior to operate seized coal mine); Toledo v. United States, D.C., 95 F.Supp. 838 (failure to remove diseased experimental tree).

14. Boyce v. United States, D.C., 93 F. Supp. 866 (the damaging dynamite blasting in deepening the Missouri held discretionary due to approval of the detailed plans and specifications by Chief of Engineers; however, the Court said the result might have been different if the employees actually detonating the dynamite had deviated from the approved plan); Thomas v. United States, D.C., 81 F.Supp. 881 (installation of revetment in Missouri River so as to deflect water upon plaintiff's lands under detailed plans chosen by Chief of Engineers held discretionary).

15. Coates v. United States, 8 Cir., 181 F.2d 816 (plaintiff complained of the

influenced other decisions,[16] the Court construed a complaint as failing to allege a claim based on negligent performance of "some mere job of work involved in carrying on the river project", i. e., based on details only incidental to the governmental action. Rather, the complaint was dismissed because its gravamen "comprehends the Missouri River control program and its execution by the government agencies continuing on a vast scale since 1928. * * * pursuant to political and discretionary decisions of the highest governmental order".

I emphasize the interpretations placed on the cases cited are not intended to convey the impression harmony reigns among the decisions construing "discretionary function or duty". To the contrary, a recent Fifth Circuit decision [17] is exemplary. There, relief was denied on the basis of § 2680's "discretionary" exception, the Court saying, 197 F.2d at page 779: "The subordinate officers or agents are protected in the performance of their duty according to the directions of those vested with the discretionary functions or duties."

As is so often true in the gradual but constant growth and development of decisional law, a more crystalline construction of the statute will invariably be subordinated to the peculiar facts of each arising case.

3. The complaint here has sufficiently alleged a cause of action against the United States under Delaware law and according to the Federal Rules. Evidence of negligence of government agents in executing or performing the detailed work or "mere job of work" incidental to the admittedly discretionary decision of the Secretary of War to construct the New Castle Air Base may properly be introduced under the complaint allegations. At this stage of the proceedings, however, I cannot rule out plaintiff's claim as being damnum absque injuria because the allegations are fully as consistent with non-discretionary governmental functions as they are with discretionary functions, and certainty of no right to relief must attend dismissal. Continental Collieries v. Shober, supra. If the evidence at trial discloses only that plaintiff complains of the discretionary decision to build an air base—which has been strongly negatived at argument—dismissal can then be ordered. However, I am convinced there is a wide area of governmental activities following and attendant upon, in more or less degree, the exercise of official discretion for which the United States has shed its cloak of immunity to suit by the Federal Tort Claims Act. Plaintiff's allegations herein would seem to fall clearly within this permissive area.

Motion to dismiss the complaint denied.

Government's 20 year, continuous "program of creating an avenue of waterway transportation over Missouri River * * * by substantially changing the flow, current, channel, banks, and course of the Missouri River").

16. North v. United States, D.C., 94 F. Supp. 824 (irrigation dam alleged cause of impeding flow of plaintiff's underground waters; main basis of decision appears to be this did not constitute a "taking" of plaintiff's lands under the 5th Amendment. On the basis of Coates v. United States, supra, the Court only lightly touched the "discretionary" phase of the case); Olson v. United States, D. C., 93 F.Supp. 150 (when and how much flood water to release from government dam held performance of a discretionary function); Boyce v. United States, footnote 14, supra.

17. In re Texas City Disaster Litigation, 5 Cir., 197 F.2d 771, certiorari granted November 11, 1952, sub nom. Dalehite v. United States, 344 U.S. 873, 73 S.Ct. 166. Of the six Circuit Judges sitting en banc, three joined in the majority opinion, one concurred specially, and two concurred in part and dissented in part. The minority opinions recognized the Government as bound to exercise due care in the performance of a function once undertaken, even though the choice of undertaking it might be discretionary. The majority reasoning closely parallels that of the cases cited in footnote 14, supra.