GUY F. ATKINSON COMPANY, a corporation, Plaintiff,

v.

MERRITT, CHAPMAN, & SCOTT CORPORATION, a corporation, The Savin Construction Corporation, a corporation, individually, and as joint venturers; United States of America, et al., Defendants.

No. 33585.

United States District Court
N. D. California, S. D.

Nov. 5, 1954.

fendants Merritt, Chapman & Scott Corp. and The Savin Construction Corp.

Lloyd H. Burke, U. S. Atty., George A. Blackstone, Asst. U. S. Atty., San Francisco, Cal., for defendant United States of America.

OLIVER J. CARTER, District Judge.

This is an action under the Federal Tort Claims Act, 28 U.S.C.A. § 2671 et seq., arising out of the following facts:

Plaintiff is constructing Folsom Power Plant on the American River under a contract with the Bureau of Reclamation of the United States Department of the Interior. Adjacent to plaintiff's construction site, defendant, United States of America, through the Corps of Army Engineers, is constructing Folsom Dam under contract with defendants, Merritt, Chapman & Scott Corporation and The Savin Construction Corporation. Defendants built a cofferdam upstream from plaintiff's construction site to retain and divert the waters of the American River from the areas in which Folsom Dam and Folsom Power Plant were being constructed. Defendants' upstream cofferdam collapsed on January 9, 1953, causing a sudden flow of water which inundated plaintiff's construction site, resulting in substantial damage to plaintiff. Subsequently defendants rebuilt the upstream cofferdam which collapsed again on May 20, 1953, causing a sudden flow of water, resulting in further damage to plaintiff.

United States District Judge O. D. Hamlin, 123 F.Supp. 720, granted defendants' motion to strike the first four causes of action of the complaint, which were based upon the theory of strict liability, and therefore they are no longer in the case and this order will be confined to a consideration of the fifth, sixth, seventh and eighth causes of action in relation to defendant's motion for summary judgment.

Johnson & Stanton, Gardiner Johnson, John A. Sproul, San Francisco, Cal., for plaintiff.

Bronson, Bronson & McKinnon, Kirke La Shelle, San Francisco, Cal., for de-

The fifth and sixth causes of action allege specific acts of negligence leading up to the first and second failures of the upstream cofferdam, and the seventh and eighth causes of action allege negligence

in general terms with regard to each collapse of the cofferdam.

Defendant's motion for summary judgment is based upon three contentions; the first is that because of certain language found in Section 42 of Specifications No. DC–3662, and in Order for Changes No. 2 to the contract between plaintiff and the Bureau of Reclamation, plaintiff indemnified the United States against liability arising out of the damage complained of.

■■ It is a sufficient answer to this contention that the meaning of the language in question is disputed by the parties, because plaintiff and defendant have different versions of the circumstances surrounding the framing of the disputed language, and each ascribes a different meaning to the words; therefore there are disputed questions of fact. But further than this, plaintiff has alleged acts of affirmative negligence. The exculpatory language relied upon by defendant does not refer to negligence at all. The California rule of interpretation of exculpatory clauses is that the clause is not construed to indemnify against negligence unless that is explicitly referred to:

> " ' "The defendant itself wrote the provision into the contract for its own benefit. It could have plainly stated, if such was the understanding of the parties, that the plaintiff agreed to relieve it in the matter from all liability for its own negligence. As it did not do so, we resolve all doubt, as we should, in favor of the plaintiff, and hold that it was not the intent of the parties to give to the contract as written the effect claimed by the company." ' " Basin Oil Co. of California v. Baash-Ross Tool Co., 125 Cal.App.2d 578, 271 P.2d 122, 132.

This rule is not limited to cases involving the landlord and tenant relationship, since the Basin Oil Co. case arose from a sale of chattels and Pacific Indemnity Co. v. California Electric Works, Ltd., 29 Cal.App.2d 260, 84 P.2d 313,

involved a contract for the construction of a building. The California rule is also the majority rule according to a recent annotation in 175 A.L.R. 8, 29:

> "In the overwhelming majority of the cases the result reached by their interpretational efforts can be condensed into the single rule that where the parties fail to refer expressly to negligence on their contract such failure evidences the parties' intention not to provide for indemnity for the indemnitee's negligent acts."

Therefore defendant's first contention is without merit.

Defendant's second contention is that the United States is specifically exempt from liability for flood damage under Section 3 of the Mississippi River Flood Control Act of 1928, 33 U.S.C.A. § 702c:

> "No liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place * * *."

■ Upon careful consideration of the background of the quoted section, this Court is of the opinion that its purpose was to prevent the Government from being held liable for the staggering amount of damage caused by natural floods, merely because the Government had embarked upon a vast program of flood control in an effort to alleviate the effect of the floods. Because floods could not be eliminated in a single year, flood damage was bound to recur, and Congress did not want to burden its efforts to lessen the total effect of the floods with the cost of the damage that was certain to result in spite of its efforts. In rejecting a proposal to reverse this Congressional policy by indemnifying victims of flood damage, the House Committee on Appropriations said:

> "The Committee believes that the approval of the proposed indemnification program would commit the Federal Government to a new concept of Federal responsibility which would result in an almost unlimited

number of claims from victims of every 'Act of God' disaster throughout the country regardless of the type or size of the disaster. The financial implications inherent in such an action would be enormous." H.Rept. 1092 on H.J.Res. 341, 82d Con., 1st Sess., p. 5.

Thus the purpose of the enactment in question was to avoid financial liability being placed on the Federal Government for 'Act of God' disasters, because of the enormous damage which results—often running into the hundreds of millions of dollars. It seems plain that Congress did not intend to disclaim Federal liability for water damage of every conceivable kind, but rather to exempt the Government from liability for damage resulting only from events that could properly be described as floods. Liability in the case at bar turns in part upon a proper interpretation of the term "floods or flood waters" found in Section 702c.

■ The owner of a private home might say that a water pipe burst and "flooded" his basement with water. Clearly that type of flooding would not come within the purview of the Act in question. The event which caused the water damage in the case at bar is somewhere between a flooded basement and an "Act of God" flood disaster. Its exact nature cannot be determined by the pleadings, and for that reason alone the defendant's motion for summary judgment must be denied as to this aspect of the case, since the evidence may show that the gush of water that damaged plaintiff was not a flood within the meaning of 33 U.S.C.A. § 702c.

Therefore defendant's second contention is not sufficient to justify granting a motion for summary judgment.

Defendant's third contention is that in building the upstream cofferdam, the United States was engaged in the exercise of a discretionary function and therefore was exempt from liability by virtue of 28 U.S.C. § 2680(a), which provides that the Federal Tort Claims Act shall not apply to:

"Any claim * * * based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

Here again more evidence is needed to establish whether the pertinent decisions regarding the planning and construction of the cofferdams were made by the government, and whether the building of the cofferdams resulted from the exercise of executive and legislative discretion in authorizing the entire project or whether the building of the cofferdams was a "mere job of work" incidental to the discretionary decision to construct the whole project.

Plaintiff alleges that "defendants, and each of them, planned, constructed and maintained two large cofferdams." This allegation does not reveal to what extent the decision was made by the Government, and that is an issue that can be determined more easily after hearing evidence on the matter.

In Smith v. United States, D.C.Del., 113 F.Supp. 131, the plaintiff alleged that the building of an Army Air Force base upstream had damaged his land. The Government moved to dismiss, and in holding that the manner of building an Air Force base was not necessarily a discretionary function, the court said, at page 136:

"At this stage of the proceedings, however, I cannot rule out plaintiff's claim as being damnum absque injuria because the allegations are fully as consistent with non-discretionary governmental functions as they are with discretionary functions, and certainty of no right to relief must attend dismissal."

In a case involving a flow of water, Ure v. United States, D.C.Or., 93 F.Supp. 779, 792, the court held that the planning and construction of an irrigation canal was not a discretionary function, and held the Government liable on a theory of strict liability for damage to plaintiff's

land by water flowing from a break in the canal.

Therefore it cannot be said that there is no genuine issue of fact on this aspect of the case, since it is possible that the evidence will show that the planning and building of the cofferdam did not constitute the exercise of a discretionary function. The action of this Court in denying defendant's motion for summary judgment is consistent with the policy of the Supreme Court which is described in the following language from Dye v. United States, 6 Cir., 210 F.2d 123, 128:

> "The Supreme Court, in United States v. Yellow Cab Co., 340 U.S. 543, 547, 550, 71 S.Ct. 399, 95 L.Ed. 523, said that the Federal Tort Claims Act, in sweeping language, waives in favor of an injured person the government's immunity from suit; and that the general trend toward increasing the scope of the waiver by the United States of its sovereign immunity from suit is inconsistent with whittling it down by refinements. In Spelar v. United States, 2 Cir., 171 F.2d 208, 209, it was held that the policy of governmental generosity toward tort claimants established by the Federal Tort Claims Act should not be set aside or hampered by a niggardly construction, particularly with respect to the broad terms of coverage."

None of the cases cited by defendant compel a different result at this stage of the proceedings. In Coates v. United States, 8 Cir., 181 F.2d 816, 19 A.L.R.2d 840, the allegations of the complaint were not consistent with any theory of non-discretionary activities on the part of the Government; both Olson v. United States, D.C.N.D., 93 F.Supp. 150, and Lauterbach v. United States, D.C.W.D. Wash., 95 F.Supp. 479, involve deliberate decisions to release certain amounts of waters impounded behind dams: as said in the Olson case 93 F.Supp. at pages 152–153:

> "*When* flood waters are to be released and *how much* water is to be released certainly calls for the exercise of judgment; in other words, the performance of a discretionary function."

In North v. United States, D.C.Utah, 94 F.Supp. 824, the issue was whether there was a taking of the plaintiff's property; in National Mfg. Co. v. United States, 8 Cir., 210 F.2d 263, the court held that flood forecasting by the Weather Bureau was a discretionary function, the decision resting in part on a statute which expressly gave the Weather Bureau a wide latitude of discretion to determine whether such forecasting was advisable; and in Clark v. United States, D.C.Or., 109 F.Supp. 213, the case was decided after a trial on the merits when the facts were clearly before the court: in the case at bar a trial will be necessary to supply the Court with the facts on which its decision must be based.

■■ In view of the policy of liberality toward tort claimants embodied in the Federal Tort Claims Act, it cannot be said as a matter of law in the present posture of the case that the planning and building of the cofferdams was a discretionary function. The following language from Smith v. United States, D.C.Del., 113 F.Supp. 131, 136, is pertinent:

> "However, I am convinced there is a wide area of governmental activities following and attendant upon, in more or less degree, the exercise of official discretion for which the United States has shed its cloak of immunity to suit by the Federal Tort Claims Act."

Accordingly, defendant's motion for summary judgment will be denied.

It is ordered that the motion of defendant United States of America for summary judgment be, and the same is hereby denied.