the defense of estoppel is granted, and defendant's cross-motion is denied.

It is so ordered.

JONES, Chief Judge, and LITTLETON (Retired), MADDEN and WHITAKER, Judges, concur.

**F. & M. SCHAEFER BREWING COMPANY**

v.

**UNITED STATES.**

Cong. No. 15–55.

United States Court of Claims.

July 15, 1959.

Henry C. Eidenbach, New York City, for plaintiff.

Louis E. Greco and J. Frank Staley, Washington, D. C., with whom was Asst. Atty. Gen. George C. Doub, for defendant.

DANAHER, Circuit Judge, sitting by designation.

This case is before the court pursuant to House Resolution 287, July 19, 1955, 84th Cong., 1st Sess., referring a bill, H.R. 6982 as authorized by 28 U.S.C. § 1492 and § 2509. At issue are the plaintiff's claims to damages resulting from the collapse of the plaintiff's bulkhead, allegedly because of excessive dredging conducted in behalf of the Navy Department. Pursuant to 28 U.S.C. § 2509, the court is charged with the duty of reporting "conclusions sufficient to inform Congress whether the demand is a legal or equitable claim or a gratuity, and the amount, if any, legally or equitably due from the United States to the claimant."

Plaintiff argues in support of its "equitable" [1] claim that when the Commissioner concluded that the bulkhead was in "deteriorated" condition at the time of its collapse on June 28, 1946, he failed to take into consideration that the bulkhead and the upland property had been used by

[1]. "Equitable" is here used not in a strict technical sense. United States v. Realty Co., 1896, 163 U.S. 427, 440, 16 S.Ct. 1120, 41 L.Ed. 215; Burkhardt v. United States, 1949, 84 F.Supp. 553, 113 Ct.Cl. 658.

the United States Navy during the period from June 10, 1943, to August 2, 1945.

Plaintiff argues in support of its "legal"[2] claim that the dredging operations and the deepening of Wallabout Channel were the efficient cause of the collapse of the bulkhead and that the plaintiff had not been given any notice of the nature and extent of the dredging operations.

Plaintiff, a New York corporation with an office and place of business in Brooklyn is the owner of a certain bulkhead and dock fronting on the east side of Wallabout Bay and Channel in the harbor of New York. On March 28, 1945, the District Engineer for the New York District issued a War Department permit authorizing dredging to a depth of some 38 feet below mean low water in Wallabout Channel at the United States Navy Yard in Brooklyn. The permit was issued pursuant to section 10 of the Act of Congress approved March 3, 1899, 30 Stat. 1151, 33 U.S.C.A. § 403. The Navy Department negotiated a contract for the authorized dredging with an independent contractor. Plaintiff alleged that the dredging was excessive and that the deepening of Wallabout Channel undercut the subsurface fill of the bulkhead of plaintiff's property so that the piling was undermined. As a result, plaintiff alleged, a section of plaintiff's bulkhead, approximately 310 feet in length, collapsed on June 28, 1946. Plaintiff accordingly claimed damages of $157,699.

It is clear we do not here have a taking for which compensation might be provided, indeed no taking is alleged.[3]

Rather, the record comes down to this: the Navy Department pursuant to approved plans contracted for dredging navigable waters adjacent to the Navy Yard piers some 280 feet across the channel from plaintiff's bulkhead. The work was necessary to permit a depth of about 38 feet to facilitate the berthing of naval vessels, including the large carrier, Franklin D. Roosevelt. Dredging operations were conducted between March 29, 1945, and April 21, 1945, when dredging terminated. *Fourteen months* later a section of the plaintiff's bulkhead, about 50 years old, collapsed. The bulkhead was inherently weak. There were no transverse or bracing pilings. The bulkhead was not anchored by tiebacks to the mainland to guard against lateral thrust. On the outer edge of the bulkhead there had been erected a concrete seawall exerting a weight pressure of about 950 pounds per square foot. New York authorities in issuing a repair permit in 1940 had provided there was to be no commercial use and *no surcharge*.[4] Yet after the dredging, it was undisputed, plaintiff, in violation of the permit, had stored beer trucks, beams, concrete forms and other construction materials on the upland adjacent to and abreast of the later collapsed section, and had otherwise utilized the bulkhead for commercial purposes, including water transportation activities.

Meanwhile, in January 1946, some six months before the collapse, plaintiff commenced construction of a steel frame bottling shop, about 110 feet distant from the bulkhead at the southerly end and 200 feet at the northern end. Excavations for the basement were made by power shovel. Then no less than 1,126 concrete pilings were installed by a steam hammer. Casings were driven down to a depth of 11½ feet, concrete was poured,

2. An earlier action brought under the Federal Tort Claims Act in the United States District Court for the Eastern District of New York seeking recovery for the loss here asserted was dismissed on jurisdictional grounds on March 3, 1954. No testimony had been taken and no hearings were held. Cf. Dalehite v. United States, 1953, 346 U.S. 15, 35, 36, notes 31 and 32, 73 S.Ct. 956, 97 L.Ed. 1427; Coates v. United States, 8 Cir., 1950, 181 F.2d 816.

3. Gibson v. United States, 1897, 166 U.S. 269, 274, 275, 17 S.Ct. 578, 41 L.Ed. 996; cf. Burkhardt v. United States, supra note 1.

4. "Surcharge" was shown to mean any additional load on the ground level whether of building materials, trucks, buildings, shanties or other materials, or people.

and the casings were capped with concrete. While experts differed as to the extent such operations caused vibration in the subsoil back of and under the bulkhead, it cannot be controverted that the plaintiff wholly failed to show that the conduct of the defendant was, as plaintiff had alleged, the "efficient" cause of the bulkhead's collapse, at 12:55 a. m. on June 28, 1946.

It is not unreasonable to infer that the collapse was occasioned by a combination of factors, including the inherent weakness of the old structure, its inevitable deterioration at the water edge, and its misuse by the addition of surcharge burdens it was not constructed to bear. At what point or to what extent the steam hammer installation of 1,126 concrete pilings played a part, we can but speculate. It is not suggested that any other waterside structure suffered in any manner. The dredging had simply increased the depth by some twelve to fifteen feet.

There is no evidence that the Navy's use of the plaintiff's property, which terminated on August 2, 1945, contributed to the collapse of the bulkhead on June 28, 1946. Nor were we shown whether or not plaintiff took a tax loss for the year 1946 in the amount of $70,-635, the low bid for the repair of the bulkhead, including an allowance of 10% of that amount for improvements. Instead, the plaintiff reconstructed the bulkhead with the substitution of steel sheet piling at an actual cost of $138,-738.09. Other items of engineering and comparable charges made up the difference to the total of plaintiff's claim.

The court concludes that the plaintiff has failed to sustain its burden of showing either equitable or legal ground for relief.

We have considered the exceptions [5] submitted by the respective parties, but perceive no occasion to differ from the findings which will follow, to be certified to the Congress pursuant to the House Resolution 287, supra.

JONES, Chief Judge, and LARAMORE, MADDEN and WHITAKER, Judges, concur.

**J. W. JONES**
v.
**UNITED STATES.**
No. 10-58.

United States Court of Claims.
July 15, 1959.

---

5. Some are simply not sustained by the record. Others are immaterial to our view, or not in accord with the salient facts or the inferences reasonably to be drawn therefrom. To illustrate, the Commissioner reported, and we concur, that plaintiff received no advance notice of the contemplated dredging. The defendant asks us to find constructive notice based upon newspaper advertisement. No officers or employees of the plaintiff took the stand to say they failed to perceive dredging operations under way for more than three weeks. We make no correction in or supplement to the findings.