## HARRIS et al. v. UNITED STATES.

## THOMAS et al. v. UNITED STATES.

## ELLIS v. UNITED STATES.

### Clv. 2832, 2858 and 2868.

United States District Court
E. D. Oklahoma.
June 30, 1952.

Edwin Langley, U. S. Atty., and Paul Gotcher, Asst. U. S. Atty., Muskogee, Okl., for defendant, United States.

Reuell W. Little and Charles R. Nesbitt, of Oklahoma City, Okl., James C. Hamill, Madill, Okl., for plaintiffs.

RICE, Chief Judge.

These causes came on for hearing on the 2nd day of June, 1952. Plaintiffs appeared in person and by attorneys, and the United States of America appeared by Edwin Langley, United States Attorney, and Paul Gotcher, Assistant United States Attorney. By agreement, the cases were tried together by the Court, with judgments to be entered separately. The Court after hearing the evidence offered by the parties, took the cases under advisement and now makes the following findings of fact and conclusions of law:

1. These suits were instituted in this Court by the plaintiffs to recover money damages for injury to their crops by the defendant, under the provisions of 28 U.S. C.A. § 1346(b), and later their complaints were amended to include an action for compensation for the taking or destruction of said crops by the defendant, under the provisions of 28 U.S.C.A. § 1346(a) and the Fifth Amendment to the Constitution of the United States.

2. On July 29, 1949, on August 1, 1949, and during the period of August 3 to August 7, 1949, the defendant, acting through its agents and employees, caused certain spraying operations to be conducted along the Washita River in the vicinity of Lake Texoma in the Eastern District of Oklahoma, on areas owned by the defendant using a chemical herbicide known as 2,4–D. Plaintiffs each owned growing crops on

nearby land which were damaged to some extent by reason of the deleterious effect of said herbicide, some of which drifted onto the plaintiffs' crops.

3. The areas sprayed by the defendant were a section of the United States Fish and Wildlife Refuge on Lake Texoma and a portion of the land in the vicinity of Lake Texoma under the immediate control of the United States Corps of Engineers. In each instance the purpose of spraying was to kill off dense willow growths. In the case of the Fish and Wildlife Refuge, the willows were choking out vegetation suitable for food for wildlife, particularly migratory birds, and thereby defeating the purpose for which the refuge was established. In the area which was under the Corps of Engineers the willows were located in a marshy tract where malaria mosquitoes were breeding, and were so thick that larvicides designed to destroy the mosquitoes could not be used effectively.

4. The problems created by the willow growths demanded solution. The decision to use the herbicide 2,4–D as a means to destroy the willows was made, both in the case of the Corps of Engineers and in the case of the Fish and Wildlife Service, by persons having the authority to do so, and in each instance involved the use of discretion as distinguished from a routine or ministerial act.

5. The actual spraying of the herbicide was done by a pilot-biologist who was an employee of the United States Fish and Wildlife Service, using an aeroplane properly equipped for the work. He was experienced in such operations and familiar with the use of 2,4–D. He did the spraying in a careful and prudent manner, limiting operations to days when weather conditions were suitable and flew the plane at as low an altitude as possible under the circumstances. Adequate precautions were taken to confine the spraying to the willow growth areas, and such drifting of the chemical as occurred was beyond his power to prevent.

6. Only one spraying operation of this nature has been conducted in this area, and there is nothing to indicate similar operations being required in the foreseeable future.

## Conclusions of Law.

1. This Court has jurisdiction over the parties herein and the subject-matter of this cause.

2. The decision on the part of the officials of the United States Fish and Wildlife Service to destroy the willow growth on the refuge at Lake Texoma to prevent the choking out of food vegetation, and to use the herbicide 2,4–D sprayed from an aeroplane as the means of doing so, and the decision of the officials of the Corps of Engineers to destroy the willow growths on land under the control of the Corps of Engineers by the same method for the purpose of enabling the breeding areas for malaria mosquitoes to be reached with larvicides, in each instance constituted the exercise of a discretionary function or duty on the part of federal agencies and employees of the Government within the meaning of 28 U.S.C.A. § 2680(a).

3. In the conduct of the spraying operations hereinabove mentioned, the actual spraying was done in a careful and prudent manner, exercising due care by a government employee in the performance of duties assigned to him, within the meaning of said 28 U.S.C.A. § 2680(a).

4. Inasmuch as there has been only one spraying operation of this nature in the area, and there is no anticipated spraying of such nature in the foreseeable future, the act complained of herein by plaintiffs is insufficient to constitute a taking of the crops within the meaning of 28 U.S.C.A. § 1346(a) or the Fifth Amendment to the Constitution of the United States.

5. The plaintiffs are not entitled to recover herein either under the provisions of 28 U.S.C.A. § 1346(a), 28 U.S.C.A. § 1346(b) or the Fifth Amendment to the Constitution, for the reasons hereinabove set out, and judgment is rendered in favor of the defendant accordingly.

Attorneys for the Government are directed to prepare decree in conformity with the foregoing Findings of Fact and Con-

300

clusions of Law and submit to the Court for signing and entry at 9:30 A.M. on the 7th day of July, 1952, at Muskogee, Oklahoma.

In the event the parties agree on the form of decree, same may be mailed to the Court for signing and entry without the appearance of the attorneys.