**BEVILACQUA v. UNITED STATES.**

**YENTSCH v. UNITED STATES.**

Nos. 209, 210.

United States District Court,
W. D. Pennsylvania.

July 28, 1954.

Patrick M. O'Donnell, Walker & O'Donnell, Pittsburgh, Pa., for plaintiffs.

John W. McIlvaine, U. S. Atty., D. Malcolm Anderson, Asst. U. S. Atty., Pittsburgh, Pa., for defendant.

GOURLEY, Chief Judge.

These are claims for money damages which arise out of two accidental drownings in the Allegheny River, Armstrong County, Pennsylvania, within the territorial jurisdiction of the United States District Court for the Western District of Pennsylvania.

Because the issues of fact are identical in both cases, and by stipulation of the parties, the cases were consolidated for trial.

The proceedings are brought by the administrator of the estate of Carl A. Bevilacqua, deceased, and administratrix of the estate of Emil Yentsch, deceased, against the United States of America pursuant to the provisions of the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671 et seq.

The case was tried without a jury and the following Opinion, Findings of Fact, Conclusions of Law, and Order are entered by the Court.

### Opinion.

The following facts are uncontroverted:

Allegheny River Lock No. 8 is one of a series of navigation locks erected by the Federal Government and operated by the Corps of Engineers of the United States Army. The Allegheny River,

above and below Lock No. 8, is a navigable stream, used by commercial and pleasure vessels.

For some months prior to the accident giving rise to these suits, Lock No. 8 was in operation from 7:00 a.m., E. D. S. T. to 11:00 p.m., E. D. S. T. During hours of operation the lock is attended by one or more lockmen who tend equipment, lock vessels through the locks, and maintain a log of traffic. During the evening hours of operation the presence of the lock is indicated to navigators by colored electric lanterns powered by electricity produced at the dam. The upper end of the lock is marked by a red light on the land wall and by three green lights on the river wall, the point at which vessels bound downstream enter the lock. Below the dam the lock is similarly identified by a red light on the land wall and by two green lights on the river wall. This marking system is uniform throughout the Allegheny River District.

The power generating equipment does not function between 11:00 p.m. and 7:00 a.m., when the lock is unattended. Though lockage between these hours is impossible, the river is used by fishermen and others throughout the night. The position of the lock and dam is indicated to these navigators by marine boom type kerosene lanterns of the same number and color as the electric lanterns and located at substantially the same places.

. Thus on a dark night the lock and dam are not visible to navigators on the river above the dam and they are warned of the peril to navigation only by the kerosene lanterns.

The lockman on the evening shift is charged with the responsibility of igniting all seven kerosene lamps and examining their condition before leaving at 11:00 p.m. The practice is long established, and the duty well understood by all employees at the locks. Failure to make certain that seven kerosene lamps are in operation at closing time is a clear breach of duty and, if detected, would subject the responsible employee to disciplinary action, possibly separation from the service.

Emil Yentsch and Carl A. Bevilacqua, libelants' intestates, left Pittsburgh in the early morning hours of July 14, in the "Patti", a fourteen foot vessel equipped with an outboard motor. On that date they passed through Allegheny River Locks Nos. 2 through 9, bound upstream, and at 10:45 p.m. passed through Lock No. 9, bound downstream. At or about midnight of the same day, libelants' intestates lost their lives when the "Patti" collided with and plunged over the eighteen foot dam at Lock No. 8.

At approximately 12:05 a.m. of July 15, 1951, Mrs. Mabel Wyant, then residing in Adrian, Pennsylvania, opposite Lock No. 8, telephoned Lock No. 7 at Kittanning, Pennsylvania, reporting that a boat had just gone over the dam at Lock No. 8 and that Lock No. 8 was in total darkness.

Lovic D. Hughes was the duty lockman at No. 8 from 3:00 p.m. to 11:00 p.m. on July 14, 1951, and it was his responsibility to light the lanterns on that date.

The crucial issue of fact presented by the pleadings and by the irreconcilable evidence offered by witnesses for claimants and for the Government is whether or not Lovic D. Hughes lit the seven kerosene lanterns before leaving Lock No. 8 at 11:00 p.m. on July 14, 1951.

Upon a most thorough review of the testimony and the inferences to be drawn therefrom, noting the disinterest of claimants' witnesses to the proceeding and the parties, and the specific interest that government employees had with respect to their personal welfare in exonerating themselves from any non-feasance, and in evaluating inconsistencies and contradictions evinced in testimony of government witnesses, and from direct personal observation of the demeanor, expression and forthrightness of witnesses, it is my judgment and conclusion that the government employee or employees entrusted with responsibility of lighting the seven kerosene lanterns on the night of July 14, 1951 had failed to do so, and that the deaths of Emil Yentsch and Carl A. Bevilacqua, libel-

ants' intestate, were the proximate result of said negligence.

At the trial of these cases the Government presented orally and in writing motions to dismiss the two claims with prejudice. In support of these motions the Government argued that the cases are excepted from the grant of consent to be sued because they involve discretionary functions and the Government has not accepted liability for the consequences of the discretionary acts of its officers and employees. Dalehite v. United States, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427.

This question was presented squarely to Government witness Edward F. Crowley, Area Chief of the Allegheny River Corps of Engineers, Pittsburgh District who had jurisdiction over Lock No. 8. He replied that the lockman had absolutely no discretion to light or not light the lanterns.

■ It is neither necessary nor appropriate to inquire into whether the chief administrative officer of the Corps of Engineers might have decided, in an exercise of discretion, that the locks should be left in darkness when unattended. It is enough that superior officers have promulgated an unqualified rule to the effect that the lock should not be left in darkness. It is clear that the negligence herein charged was in no manner associated with an exercise of discretion. U. S. v. Hull, 1 Cir., 195 F.2d 64; Jackson v. U. S., 3 Cir., 196 F.2d 725; Costley v. U. S., 5 Cir., 181 F.2d 723.

In connection with the evaluation of an appropriate award in damages, I find that Carl A. Bevilacqua was a High School Student, age 16, at the time of his demise. He was not yet gainfully employed and there exists, therefore, no record or direct evidence of his earning ability. All that is known in this regard is that he was in good health and that he had applied himself with determination to the task of preparing for gainful employment in adult life. He had a life expectancy of nearly fifty years.

■■ Under the laws of Pennsylvania, the estate of Carl A. Bevilacqua has a claim for damages equal to his expected earnings less cost of maintenance and reduced to present worth. Under the circumstances this loss is somewhat conjectural but can be fairly estimated at $1,500.

■■ The parents of Carl A. Bevilacqua likewise have suffered a financial loss which is compensable under Pennsylvania law. That loss is equal to funeral expenses in the amount of $1,280.50, and expected financial assistance, the latter element again reduced to present worth. The award hereunder is $1,000.

At the time of his death, Emil Yentsch was age 35, in good health, and with a probable life expectancy of 35 years. He was a sheet metal worker earning $2.87 per hour or approximately $320 per month. He was engaged in this type of employment for twelve years.

Connie Yentsch, widow of Emil Yentsch, had been married to him for only seven months when tragedy struck. She described her husband as a man of temperate behavior and moderate requirements. His full earnings were freely available for such purposes as husband and wife considered best. The Yentschs occupied an apartment for which they paid a monthly rental of $77.50. It appeared that Mr. Yentsch's personal needs, including lunches and transportation to work, amounted to about $80 monthly. He made monthly contributions for the support of his father in Camden, New Jersey, in amounts of about $15.

■■ The evidence is clear that Mr. Yentsch was regular and generous in the support of his wife, and his untimely death has inflicted upon her a financial loss which is equivalent to the present worth of her expected contributions from him during a period of his remunerative employment. In addition the funeral expenses totaled $660.32. The award to the dependent wife is $10,000.

■ ·The estate of Emil Yentsch is likewise entitled to receive the present

worth of his expected future earnings less cost of maintenance. The award under the survival action is fixed at $1,-000.

### Findings of Fact.

1. Lovic D. Hughes was charged with the responsibility of lighting the kerosene lanterns at Lock No. 8 on July 14, 1951, and that he failed to do so.

2. As a direct consequence of the aforesaid negligence of a government employee,.acting within the scope of his employment, Lock No. 8 was in darkness when the Patti collided with the dam.

3. As a direct and foreseeable consequence of the aforesaid negligence and the dangerous condition created thereby, libelants' intestates lost their lives on or about 12:00 p. m., July 14, 1951.

### Conclusions of Law.

1. Jurisdiction is vested in this Court by virtue of the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671 et seq.

2. The negligence of the government employee or employees entrusted with responsibility of lighting the seven kerosene lanterns, in failing to light said lanterns, on the night of July 14, 1951, at Lock No. 8 was the proximate cause of the deaths of Emil Yentsch and Carl A. Bevilacqua, libelants' intestates.

3. The negligence in failing to light the said lanterns on the night of July 14, 1951 was in no manner associated with an exercise of governmental discretion.

4. Carmen P. Bevilacqua, administrator of the estate of Carl A. Bevilacqua, deceased, is entitled to recover $1,500 in behalf of the estate of Carl A. Bevilacqua, $1,280.50 as funeral bill in behalf of the parents of said decedent, and $1,000 as expected financial assistance in behalf of parents of said decedent.

5. Connie Yentsch, administratrix of the estate of Emil Yentsch, deceased, is entitled to recover $10,000 in behalf of decedent's widow, $660.32 as funeral expenses in behalf of decedent's widow, and $1,000 in behalf of the estate of Emil Yentsch.

An appropriate order is entered.