David C. BULLOCH, McRae N. Bulloch, and Kern Bulloch, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. No. C–19–55.

United States District Court
D. Utah, Central Division.

Aug. 2, 1955.

Richards, Bird & Bushnell, Dan S. Bushnell, Romney, Boyer & Ronnow, D. Christian Ronnow, Salt Lake City, Utah, for plaintiffs.

A. Pratt Kesler, U. S. Atty. for the District of Utah; Llewellyn O. Thomas, Asst. U. S. Atty. for the District of Utah, Salt Lake City, Utah, for defendant.

CHRISTENSON, District Judge.

This is an action brought by certain sheep owners, plaintiffs herein, to recover damages caused to their herds by the United States of America as a result

of nuclear tests conducted by the Government in Nevada in 1952–53. For authority to sue the United States, reliance is placed by plaintiffs upon the Federal Tort Claims Act of August 2nd, 1946, Title 4, Public Law 601, 79th Congress, as amended, 28 U.S.C.A. § 1346.

In addition to this claim of right to sue the United States, in substance the complaint alleges that plaintiffs are residents of Cedar City, Iron County, State of Utah; that in 1952–53 the United States Government through the Atomic Energy Commission, conducted a series of nuclear tests and experiments at the Nevada Proving Ground northwest of Las Vegas, Nevada; that these tests and experiments were "negligently performed, conducted, discharged and executed" by the agents of the defendant acting within the scope of their employment and that as a result, plaintiffs sustained specified damages to their sheep herds; they pray judgment for substantial damages and costs.

Among the defenses interposed by the answer are that the claim alleged in the complaint is not within the terms of the Federal Tort Claims Act, not meeting the conditions of 28 U.S.C.A. §§ 1346(b), 2674, and being excluded by 28 U.S.C.A. § 2680(a), and that, therefore, this Court lacks jurisdiction; and that no claim is stated against the defendant for which recovery may be had because the complaint is based upon the exercise or performance, or the failure to exercise or perform, a discretionary function or duty for which defendant has not consented to be sued.

At the time originally set for the pretrial conference, the foregoing defenses, based upon the claimed insufficiency of the complaint, were urged. At the suggestion of the Court, concurred in by counsel for the parties, a motion to dismiss the complaint on the ground that it did not state a claim on which relief could be granted, was deemed before the Court. This motion has now been submitted for decision on briefs.

■ The question to be resolved here, broadly stated, is whether the Federal Tort Claims Act authorizes suit against the United States for damages caused by the negligent performance, conduct, discharge or execution of nuclear tests or experiments by the Government. Because the issue is raised by motion to dismiss the complaint for its alleged failure to state a claim on which relief can be granted, we are not concerned with the niceties of pleading. Only if it appears that plaintiff would not be entitled to relief under any set of facts which could be proved in support of the allegations of the complaint, should the motion be granted. Thomas v. Pick Hotels Corporation, 10 Cir., 1955, 224 F.2d 664; Clyde v. Broderick, 10 Cir., 1944, 144 F.2d 348; United States ex rel. Peters v. Carson, D.C.W.D.Pa.1954, 126 F.Supp. 137.

■ The Tort Claims Act, including its exceptions, is too well known and has been too frequently construed to justify here a detailed review of its terms or legislative history, or a general survey of the cases interpreting it. See Annotation 1 A.L.R.2d 222. The principle controlling in this case is that there can be no recovery against the Government on any claim based upon the exercise or performance, or the failure to exercise or perform, a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved was abused. 28 U.S.C.A. § 2680(a); annotation 19 A.L.R.2d 845.

Where the acts or omissions relied upon are those directly involving the exercise of discretion, the Courts have not hesitated to deny recovery, whether the discretion was regarded as properly, improperly or negligently exercised. Smart v. United States, 10 Cir., 1953, 207 F.2d 841; Chournos v. United States, 10 Cir., 1951, 193 F.2d 321, certiorari denied 343 U.S. 977, 72 S.Ct. 1074, 96 L.Ed. 1369; Coates v. United States, 8 Cir., 1950, 181 F.2d 816, 19 A.L.R.2d 840; North v. United States, D.C.D.Utah, Cent.D., 1950, 94 F.Supp. 824, 19 A.L.R.2d 845. Where it is clear, as here, that the major, or overall, activity involved the exercise

of a discretionary function or duty on the part of a federal agency or its employees, but where the acts or omissions relied upon may be substantially independent of, or merely incidental to, any authorized discretionary performance, difficulty and conflict are indicated in the decisions.

There is a line of authority which at least infers that any act or omission which arises within the scope and in the course of performance of a discretionary function of government, cannot furnish the basis of a valid claim under the Act. Williams v. United States, D.C.N.D.Fla., Marianna D., 1953, 115 F.Supp. 386, affirmed 5 Cir., 218 F.2d 473; Olson v. United States, D.C.D.N.D.N.W.D.1950, 93 F.Supp. 150; Thomas v. United States, D.C.W.D.Mo.St.Jo.D.1949, 81 F. Supp. 881.

There is another line of authority which distinguishes between acts or omissions arising from the exercise or performance of a discretionary function and those occurring within the scope or area of the discretionary function but which themselves do not involve any proper element of discretion. Ford v. United States, 10 Cir., 1952, 200 F.2d 272 (denying recovery but apparently recognizing principle); United States v. Gray, 10 Cir., 1952, 199 F.2d 239; Oman v. United States, 10 Cir., 1949, 179 F.2d 738, affirmed 10 Cir., 195 F.2d 710; United States v. White, 9 Cir., 1954, 211 F.2d 79; Pennsylvania R. R. Co. v. United States, and related cases, D.C. D.N.J.1954, 124 F.Supp. 52; Bevilacqua v. United States (Yentsch v. United States), D.C.W.D.Pa.1954, 122 F.Supp. 493; Hernandez v. United States, D.C.D. Hawaii, 1953, 112 F.Supp. 369; Worley v. United States, D.C.D.Or.1952, 119 F. Supp. 719; Harris v. United States (Thomas v. United States, Ellis v. United States), D.C.E.D.Okl.1952, 106 F.Supp. 298, affirmed 10 Cir., 205 F.2d 765 (recovery denied but principle recognized); Grigalauskas v. United States, D.C.D. Mass.1951, 103 F.Supp. 543, affirmed 1 Cir., 195 F.2d 494.

The reasoning employed in the latter cases seems more persuasive. I am inclined to follow it, unless the case of Dalehite v. United States, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427, forecloses this, as has been suggested by the defendant. There, indeed, is language in the decision which, if considered out of context and without reference to the facts involved, throws doubt on plaintiffs' position.

■ There can be no doubt that the determination of how tests are to be conducted, when they are to be conducted, and in what manner they are to be conducted, whether made at high or low level, as long as within the discretionary power granted by Congress to the Atomic Energy Commission, could not give rise to liability, notwithstanding how lacking in ordinary care or circumspection such determination might be. On the other hand, it seems equally as clear that if an official were driving an automobile incidental to the planning or execution of a nuclear test and within the scope of duties in connection therewith, and by gross inattention and carelessness, let us say, he killed a child, not because he was exercising a discretion in traveling at a rate of speed bearing some relationship to the exigencies of his duty, but because he was just plain careless, the exception provided in the Act would not protect the Government from liability.

Between these extremes may be situations more in keeping with the possibilities of the present case. All discretionary decisions or activities may have been determined. The decision to make the test and the means involved as a matter of necessity or convenience may have been decided in the exercise of a proper discretion. Yet, because of inattention to the minimum requirements of ordinary care, no notice of an impending detonation may have been given to a herder whose flocks were in the area clearly to be affected. There may have been clear knowledge of the danger to the sheep. If the failure to give notice reasonably could be attributed to a discre-

tionary decision at any level that such notice would be impractical or would interfere with the carrying out of the project or would involve wasted time without justification, the Court might not be permitted to weigh exercise of that discretion to see whether it comported with due care or was abused. However, if none of these or similar questions were involved, but without reference to any discretionary decision, damage was caused by a negligent failure to do what ordinary care would require, I cannot but think that a case might thus be presented on which relief could be granted under the Tort Claims Act.

Several comments in the Dalehite case are consistent with this idea, and others affirmatively support it. I quote only a few: (Emphasis added).

"*It is unnecessary to define, apart from this case, precisely where discretion ends.* It is enough to hold, as we do, that the 'discretionary function or duty' that cannot form a basis for suit under the Tort Claims Act includes more than the initiation of programs and activities. *It also includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision there is discretion.* It necessarily follows that acts of subordinates in carrying out the operations of government *in accordance with official directions cannot be actionable. * * *"* 73 S.Ct. at page 968.

"* * * *The decisions held culpable were all responsibly made at a planning rather than operational level and involved considerations more or less important to the practicability of the Government's fertilizer program.*" 73 S.Ct. at page 971.

"'*There must be knowledge of a danger, not merely possible, but probable*', MacPherson v. Buick Motor Co., 217 N.Y. 382, 389, 111 N.E. 1050, 1053, L.R.A.1916F, 696. *Here,*

*nothing so startling was adduced. * * * *"* 73 S.Ct. at page 971.

"The District Court's holding that the Coast Guard and other agencies were negligent in failing to prevent the fire *by regulating storage or loading of the fertilizer in some different fashion* is like his specific citations of negligence discussed above. *They are classically within the exception. 'The power to adopt regulations or by-laws * * for the preservation of the public health, or to pass ordinances prescribing and regulating the duties of policemen and firemen * * * are generally regarded as discretionary, because, in their nature, they are legislative.' * * ** The courts have traditionally refused to question the judgments on which they are based. * * *"* 73 S.Ct. at pages 971–972.

"As to the alleged failure in fighting the fire, we think this too without the Act. The Act did not create new causes of action where none existed before. * * * *It did not change the normal rule that an alleged failure or carelessness of public firemen does not create private actionable rights. * * *"* 73 S.Ct. at page 972.

I conclude that negligent performance, after discretion has been exercised, and not involving any discretionary power, is not contemplated by the cited exception concerning discretionary functions. I believe that this conclusion is in accordance with the doctrine of the Dalehite case. A portion of the quoted material goes to another point, which will be discussed later.

The Government argues that the "claims of the plaintiffs against the United States are based upon the performance of a governmental function and as such are excluded from the coverage of the Federal Tort Claims Act." Most of this argument is based upon language in the Dalehite case which has been sufficiently noticed above. The rationale of the argument is that since nuclear ex-

perimentation is a governmental function, any act or omission in the course of such a project is excluded because this would be a part of the governmental function. In a sense, all activities of the Government are governmental functions. If their inherent nature in this respect is sufficient to exclude liability on the part of the United States, there would be few, if any, cases that could be brought under the Federal Tort Claims Act. As we have seen, the Dalehite case does not actually turn upon the question of whether the major activity is a governmental function. It refers to *acts* of a governmental nature or function. We must look to the nature of the acts or omissions, themselves, rather than to the nature of the major project or undertaking in the course of which they occur.

It is true that Williams v. United States, supra, contains some indications to the contrary. The determinative phase of this decision, however, involved the application of the res ipsa loquitur doctrine, where such application might conflict with the "state secrets" doctrine. Aside from this distinguishing feature, which is not involved in the present case (at least on the basis of the issues raised in the pleadings), the Williams case is not very persuasive. It has been criticised in a case note appearing in Vol. 6, p. 734, of the Stanford Law Review, July, 1954. The following comment in this note appears to me fully justified:

"Some commentators have interpreted Dalehite as extending the immunity granted by 2680(a) to negligent acts of subordinates performed under discretionary decisions of their superiors. Apparently, the principal case adopts this view. However the Dalehite decision is not based on the premises that whenever a lower-level decision is part of a broad segment of governmental activity characterized as discretionary it itself is within 2680(a), but on the conclusion that the particular lower-level decisions there involved were themselves discretionary. The opinion distinguished between decisions made at the 'planning' level and those made at the 'operational' level. While the Court did not define these terms, it did determine that the specific decisions alleged to have been negligent were within the 'planning' category and therefore discretionary. Thus, since the Dalehite case does not appear to have altered the approach taken in earlier cases, the applicability of section 2680(a) still turns on whether a specific act was discretionary, not on the character of the master plan.

"Consequently, in the principal case the Government should not have been allowed to invoke the discretionary function exception unless the allegedly negligent act were shown to be 'discretionary'. Such a showing, of course, would have been virtually impossible since plaintiff did not allege specific negligence but rather relied on res ipsa loquitur." (pp. 736-7)

This reasoning is reinforced by the three latest published cases referring to the Dalehite decision, the citations to which have been recently noted in Shepard's United States Citations, Advance Sheet Edition for August, 1955. In Eastern Air Lines, Inc., v. Union Trust Company (United States v. Union Trust Company) D.C.Cir.1955, 221 F.2d 62, the Court commented that " * * * Discretion was exercised when it was decided to operate the tower, but the tower personnel had no discretion to operate it negligently." At page 77. In Sullivan v. United States, D.C.N.D.Ill.E.D.1955, 129 F.Supp. 713, Judge Campbell, holding that the Government was liable for results of the negligent operation of a motor vehicle by an FBI agent pursuing a person where arrest had been ordered by the Department of Justice, commented: " * * * if the activity at the operational level was not performed in accordance with some plan or program, then the activity would not be discretionary and would be actionable." At page 714. In Dahlstrom v. United States, D.C.D.Minn. 1955, 129 F.Supp. 772, recovery against

the Government was denied but only because the case did not come within the recognized rule that " * * * where the particular negligent act relied upon to establish liability is either a deviation from or simply not covered by the plan or schedule of operations decided upon in discharge of a discretionary authority, then the negligence, if proven, is actionable." At page 776.

■ The fact that the activity involved is a "governmental function" is not deemed conclusive against the plaintiffs. The Act excepts discretionary functions and not governmental functions as such. If the terms are deemed synonymous, the Government's argument begs the question. If, by governmental function is meant an authorized activity or project of Government irrespective of whether any particular portion thereof involves or does not involve discretion, the Government's argument is not sound. See Cerri v. United States, D.C.N.D.Cal. S.D.1948, 80 F.Supp. 831.

■ The defendant contends that the activity involved is "legally authorized" and therefore that it is excepted from the operation of the Tort Claims Act. This contention already has been substantially disposed of by the foregoing references to the Dalehite case and to the matter of governmental functions in general. Specifically, defendant argues that because the law authorizes nuclear tests and experiments by the Government (see Atomic Energy Act of 1946, 60 Stat. 755, 42 U.S.C.A. §§ 1801(b), 1803, 1806, in force when the acts complained of by plaintiff occurred), this entire area of activity is removed from the operation of the Tort Claims Act. This argument must be rejected. The law authorizes many other activities which admittedly are covered by the Tort Claims Act, depending upon the particular facts, and within the scope of which liability under the Act is commonly enforced. In truth, unless activities are authorized in some way, they would not be proper functions of the Government. The Act itself recognizes that liability may arise from authorized activities by expressly requir-

ing the act or omission to be in the scope of a governmental office or employment in order to give rise to liability on the part of the United States. See Somerset Seafood Co. v. United States, 4 Cir., 1951, 193 F.2d 631.

■■ Defendant next urges that the nuclear experiments are purely governmental because they have no private counterpart, and thus are excepted from the coverage of the Act. In the Dalehite case, in line with the doctrine of Feres v. United States, 340 U.S. 135, 71 S.Ct. 153,. 95 L.Ed. 152, it was held that claimed liability for personal injuries resulting from lapses in fire-fighting organizations had no analogy in general tort law. It was therefore concluded that "to impose liability for the alleged nonfeasance of the Coast Guard would be like holding the United States liable in tort for failure to impose a quarantine for, let us say, an outbreak of foot-and-mouth disease." 73 S.Ct. at page 972. There is a vast difference between these situations and those involving damage caused by explosion. As to the latter, liability not only is recognized as between individuals but in Utah and other states a rule of absolute liability prevails when blasted rock or debris directly causes injury to another. In any event, liability may arise from the negligent use of explosives, or even a failure to use a. high degree of care in connection with their use. Madsen v. East Jordan Irr. Co., 101 Utah 552, 125 P.2d 794; annotation 20 A.L.R.2d 1372. In Ford v. United States, supra, recovery against the Government for injuries sustained in the explosion of a booby trap at a deactivated military reservation was denied, but this was upon the ground that under Oklahoma law, negligence had not been established. Despite the governmental nature of the military project, the Court stated that the United States owed a duty to persons who were actually known to be, or reasonably expected to be, at a military reservation that had been deactivated, to exercise ordinary care to prevent injury to them, but that such duty could be discharged by giving ade-

quate warning or by the exercise of due care to make the premises reasonably safe. The fact that an absolute liability under state law may be imposed against individuals for certain dangerous activities does not relieve the Government from liability under the Tort Claims Act where the negligence thereby required is established. United States v. Praylou (United States v. Walker), 4 Cir., 1953, 208 F.2d 291, certiorari denied 347 U.S. 934, 74 S.Ct. 628, 98 L.Ed. 1085.

Under the Tort Claims Act permitting recovery against the United States if a private person would be liable, it is not necessary to show that a private person could be sued under identical circumstances. Cerri v. United States, supra. It is pointed out that private persons under existing law cannot legally detonate a nuclear device. Neither can they maintain armies, operate the postal service, operate, independent of Government, certain secret experimental aircraft, or operate military airbases. Yet, there are analogous private activities in the scope of which certain negligent acts would give rise to private liability. I have no doubt that as to these, there may be corresponding responsibility on the part of the Government under the Tort Claims Act, depending on the particular facts See Air Transport Associates, Inc., v. United States, 9 Cir., 1955, 221 F.2d 467. I also believe that to hold the Government responsible for certain acts or omissions occurring in the course of nuclear tests would not necessarily visit the Government with "novel or unprecedented liabilities" contrary to the intent of Congress.

Finally, the defendant argues that since "Government employees are immune to suit for damages for the manner in which they have performed governmental acts which involved the exercise of judgment or discretion", the Government likewise would not be liable by reason of such acts. This is begging the question. Of course, if the particular act or omission were a discretionary one, no liability could be predicated thereon by reason of the exception set out in 28

U.S.C.A. § 2680(a). Such cases as Spalding v. Vilas, 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780, relied on by defendant, holding that the head of a department is not liable for damages by reason of official communications pursuant to an Act of Congress are not too helpful. The major premise of defendant's argument, that is, that there can be no governmental liability in the absence of individual liability, has been questioned under certain circumstances. United States v. Trubow, 9 Cir., 1954, 214 F.2d 192; Jackson v. United States, 3 Cir., 1952, 196 F.2d 725; United States v. Hull, 1 Cir., 1952, 195 F.2d 64. It is unnecessary to debate this refinement, except to note in passing that it seems likely that there could be governmental liability without provable individual liability where several employees by independent acts or omissions contribute to a dangerous situation the continuation of which would be actionable.

The decisive question here, however, is whether every act in the course of the performance or execution of the nuclear tests was necessarily one involving the exercise of lawful discretion or judgment. I am of the opinion that this does not necessarily follow. In any event, the real question is the same as concluded above as far as this decision is concerned. Within the perimeter of the pleadings I believe evidence could properly be received of acts in the scope of employment of agents of the Atomic Energy Commission which would not involve discretion or judgment and which, thus, would not be excluded either as a basis of liability under the Tort Claims Act or as a basis of individual liability. Whether such evidence is actually available is a point which is not before the Court. This evidence can be appraised at the proper time. Determinations as to the discretionary nature of specific acts or omissions may de difficult. Any mistakes in connection therewith may involve departures from the intent of Congress. If not corrected they may set patterns for similar departures. This can be best avoided in this case by hear-

ing the evidence. But if the Government's position now were sustained on the pleadings, the Act would be weakened, not by mere erosion, but by a virtual landslide which would remove from the buttress erected by Congress against governmental irresponsibility huge areas of activity in disregard of the real nature of the elements involved.

 A further question has arisen in the course of my study, unargued by the parties—whether the provisions of Section 167 of the Atomic Energy Act of 1954, as amended August 30th, 1954, c. 1073, § 1, 68 Stat. 952, 42 U.S.C.A. § 2207, indicates an intention on the part of Congress that for all claims for property damage or personal injury resulting from any detonation, explosion or radiation produced in the conduct of the Commission's program for testing atomic weapons, there should be relief other than under the Tort Claims Act. This section authorizes the Commission, without the intervention of any court, to settle such claims for not more than $5,000 upon presentation within one year after the accident or incident giving rise to them.

It might be contended with some reason that if the Tort Claims Act, including its provisions concerning administrative adjustments, had application to cases of damage caused by atomic explosions, there was no point in granting the Atomic Energy Commission this special authority, or that if it were granted such enlarged authority, an amendment to the Tort Claims Act would have sufficed. Nevertheless, I have concluded that this provision in the Atomic Energy Act is consistent with the intent and understanding on the part of Congress that under appropriate conditions action would lie by virtue of the Tort Claims Act for negligence arising in the course of the Commission's program of nuclear experimentation. The provision for administrative settlements by the Commission covers atomic explosion claims not maintainable under the Tort Claims Act. There is nothing inconsistent between the two provisions. Moreover, there is a provision in the Tort Claims Act itself permitting administrative settlements of claims not exceeding $1,000 against the Government based on negligence. 28 U.S.C.A. § 2672. The latter provision has not been supposed to have narrowed the kinds of claims which can be prosecuted in the courts under the Tort Claims Act. Nor should the provisions concerning administrative adjustments under the Atomic Energy Act have this effect even though settlements are authorized in increased amounts, not limited to cases of negligence. To expand the provisions for administrative adjustments in the Tort Claims Act to give the Atomic Energy Commission power to settle not only for the results of negligent acts in an increased amount, but for all other acts causing damage through detonation of nuclear devices, would have been complicated and incongruous. This object was more conveniently accomplished by setting this authority out in the Atomic Energy Act. I am of the opinion that the provisions concerning administrative adjustments contained in the Atomic Energy Act do not preclude the maintenance of plaintiffs' suit before this Court.

 It therefore is concluded that within the allegations of this complaint, plaintiffs may be able to prove a valid claim under the Tort Claims Act. I cannot assume the facts at this stage against the pleaders without violence to the liberal construction of pleadings which must be accorded the complaint; rather, uncertainty should be resolved in favor of the plaintiffs so that they may have the opportunity of proving a valid claim if the facts justify. Clyde v. Broderick, supra; Pennsylvania R. R. Co. v. United States, supra; Smith v. United States, D.C.D.Del.1953, 113 F.Supp. 131, Id., D.C., 116 F.Supp. 801.

The motion to dismiss the complaint is denied. This case, and the other cases before me turning on the same question, will be set down for pretrial on the facts in due course.